**DICKINSON WRIGHT PLLC**
John L. Krieger, Esq.
Nevada Bar No. 6023
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Tel: 702-550-4400
Fax: 844-670-6009
Email:  jkrieger@dickinsonwright.com

Donald E. Lake, III (*pro hac vice* to be submitted)
1125 17th Street, Suite 550
Denver, Colorado 80202
Tel: 303-723-8400
Email: tlake@dickinsonwright.com

*Attorneys for High Times Media, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HIGH TIMES MEDIA, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>YOTA, LLC, a limited liability company, RYAN COHEN, an individual, and DAVID COHEN, an individual,<br><br>                  Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, High Times Media, LLC ("HTM" or "Plaintiff"), by and through its attorneys of record, the law firm of Dickinson Wright PLLC, hereby alleges against Defendants, Yota, LLC, Ryan Cohen, and David Cohen (collectively, "Defendants" or "Defendants") as follows:

<u>**NATURE OF THE CASE**</u>

1.        This is an action for: infringement of registered trademarks under the Lanham Act, 15 U.S.C, §1114; infringement of unregistered trademarks (false designation of origin), 15 U.S.C. § 1125; dilution of trademarks, 15 U.S.C. § 1125(c); a declaration of non-abandonment of HTM's registered trademarks;  cancellation of U.S. Patent and Trademark Office ("PTO") registrations of

1

certain trademarks of Defendant Yota, LLC, 15 U.S.C. § 1119; rejection of certain applications by Defendant Yota, LLC for PTO registration of trademarks, 15 U.S.C. § 1119; and violation of Nevada State trademark and unfair competition laws.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the Lanham Act and all federal question matters pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

3.      This Court has jurisdiction over Plaintiff's declaratory judgment claims pursuant to 15 U.S.C. § 1119, 22 U.S.C. § 2201, and pursuant to Fed. R. Civ. P. 57 because there is a genuine controversy over the rights of Plaintiff in its registered marks, and the action will terminate an actual controversy that presently exists between the parties.

4.      This Court may exercise personal jurisdiction over Defendants because the corporate defendant, Yota, LLC is incorporated in Nevada has its principal place of business in Las Vegas, Nevada.

5.      This Court may exercise personal jurisdiction over the individual defendants because, on information and belief, Ryan Cohen and David Cohen are the managing members of Yota, LLC, with its principal place of business in Nevada. By electing to do business in the State of Nevada, the individual defendants have purposefully directed business activities within the state of Nevada; on information and belief have directed the wrongful conduct at issue in this action from Nevada; and the exercise of this court's personal jurisdiction comports with fair play and substantial justice.

6.      Venue is proper in the United States District Court for the District of Nevada because Defendants do business in this District and Defendants' conduct giving rise to the claims occurred in, or was directed from, this District.

## THE PARTIES

7.      Plaintiff is a limited liability corporation, with its principal place of business located in Phoenix, Arizona.

2

8.      Upon information and belief, Defendant Yota, LLC is a limited liability company corporation, organized under the laws of Nevada, with its principal place of business is located at 726 S. 6th Street, Suite R, Las Vegas, Nevada 89101.

9.      Upon information and belief, the individual defendants Ryan Cohen and David Cohen reside in Las Vegas, Nevada, or do business at the offices of Yota, LLC which are located at 726 S. 6th Street, Suite R, Las Vegas, Nevada 89101.

## GENERAL ALLEGATIONS

### A.  Plaintiff's Products, Services, Trademarks and Domain Names

10.     HTM owns and operates several business, including publication of the HIGH TIMES® magazine, presentation of  HIGH TIMES® CANNABIS CUP® events, production and distribution of HIGH TIMES® audio recordings and podcasts, as well as the sale HIGH TIMES™ branded smoking products and other merchandise, including HIGH TIMES® apparel (the "HIGH TIMES Businesses").

11.     HTM owns PTO registrations of various HIGH TIMES® and CANNABIS CUP® trademarks and service marks identifying HIGH TIMES Business products and services.  **Appendix A** to this Complaint is a chart that summarizes those PTO registrations and **Appendix B** contains copies of the PTO certificates of registration for those PTO registrations.  **Appendix C** is the PTO Recordation of the assignment to HTM of the Registrations referenced in Appendices A and B, above.

### 1.     HIGH TIMES® magazine

12.     The HIGH TIMES® name is a widely recognized brand of magazine, t-shirts and other clothing, podcasts and other videos related to cannabis and hemp, and production of events related to education and culture around cannabis and hemp.  For example, the HIGH TIMES magazine has its own Wikipedia page.  See, HIGH TIMES Wikipedia Entry; **Appendix D** (Wikipedia Page screen capture).

13.     Plaintiff publishes the HIGH TIMES magazine in both print and digital editions. The magazine HIGH TIMES has been in continuous publication since 1974, and Plaintiff published the most recent issue in September, 2025

3

**2.    HIGH TIMES® and CANNABIS CUP® events**

14.    Plaintiff's predecessor in interest presented since at least 2014 numerous HIGH TIMES® CANNABIS CUP® events related to education, entertainment, and culture regarding cannabis and hemp.

15.    The HIGH TIMES® CANNABIS CUP® events occurred in various U.S. locations, including Michigan, Illinois, Colorado, Oklahoma, and Southern California.    The most recent HIGH TIMES CANNABIS CUP event occurred in Massachusetts in 2024.

**3.    HIGH TIMES® audio recordings and podcasts**

16.    Plaintiff's predecessor in interest produced and distributed HIGH TIMES® audio records and podcasts since at least 2014, including publication of podcasts on August 20, 2025

**4.    HIGH TIMES™ smoking products and other merchandise**

17.    HIGH TIMES™ branded smoking products include rolling trays, lighters, bongs, and other accessories sold since 2014.

18.    Certain HIGH TIMES™ branded bongs, ash catchers, and spoon pipes are currently available for sale online, at https://smokea.com/collections/high-times.

19.    HIGH TIMES® and CANNABIS CUP® branded shirts, DVDs, and hats are for sale online at www.rockabilia.com/collections/high-times.    Collectively, the HIGH TIMES® brand magazines, t-shorts, DVDs, hats, audio recordings and podcasts, as well as the HIGH TIMES™ brand smoking accessories are referred to as the "HIGH TIMES Brand Products and Services."

**5.    Plaintiff's Registered HIGH TIMES® Marks**

20.    Plaintiff owns the PTO registrations, shown on **Appendix A,** of HIGH TIMES as a mark for Plaintiff's products and services recited in the certificates of those registrations ("Plaintiff's Registered HIGH TIMES® Marks").

21.    Plaintiff also owns the Nevada state registration shown on **Appendix E** of HIGH TIMES as a mark for Plaintiff's products and services recited in the notice of registration ("Plaintiff's State Registered HIGH TIMES® Marks").

4

**6.    Plaintiff's Unregistered HIGH TIMES™ Marks**

22.    Plaintiff owns unregistered "HIGH TIMES" trademarks for smoking accessories, including rolling papers, rolling trays, vaporizers, bongs, and grinders (the "Plaintiff's Unregistered HIGH TIMES™ Marks").

23.    **Appendix F** is a chart showing Plaintiff's Unregistered HIGH TIMES™ Mark used with smoking accessory products.

**7.    Plaintiff's Family of "HIGH TIMES" Marks**

24.    Each of the HIGH TIMES Marks that identifies HIGH TIMES Brand Products and Services and that share the word "HIGH TIMES" as the common characteristic constitute Plaintiff's family of HIGH TIMES Marks.

25.    Due to Plaintiff's composition and uses of Plaintiff's family of HIGH TIMES Marks, the public associates each individual mark and their common characteristic, "HIGH TIMES," with products and services originating from a single source, namely Plaintiff.

26.    "Plaintiff's Family of HIGH TIMES Marks" refers collectively to Plaintiff's Registered HIGH TIMES® Marks and Plaintiff's Unregistered HIGH TIMES™ Marks.

27.    On information and belief, the relevant purchasing public recognizes Plaintiff's Family of HIGH TIMES Marks and each of the HIGH TIMES Marks and the name HIGH TIMES itself, as an indicator of a common origin of the HIGH TIMES branded goods and services and the goods and services identified by marks containing the HIGH TIMES Name.

28.    Plaintiff promotes, and its predecessor in interest promoted, the HIGH TIMES Brand Products and Services using the HIGH TIMES Marks through, among other things, internet advertising, point-of-sale materials, event sponsorships, and contests.

29.    Due to Plaintiff's sales and promotion of the HIGH TIMES Brand Products and Services using Plaintiff's Family of HIGH TIMES Marks, the HIGH TIMES Marks are valuable identifiers of Plaintiff's HIGH TIMES Products and Services.

30.    Due to Plaintiff's sales and promotion of the HIGH TIMES Brand Products and Services using the HIGH TIMES Marks, the HIGH TIMES Marks serve to distinguish the HIGH TIMES Brand Products and Services from competing and complementary products and services.

31.     Plaintiff has acquired valuable goodwill and recognition for Plaintiff's Family of HIGH TIMES Marks and the public has come to associate Plaintiff's Family of HIGH TIMES Marks with goods and services from a single source in general.

32.     Plaintiff's Family of HIGH TIMES Marks has significant goodwill in the marketplace and the marks in that family or marks are uniquely associated with Plaintiff and its business, as well as the quality and nature of the HIGH TIMES Brand Products and Services.

**B. Defendants' Alleged Use and PTO Registration of the HIGH TIMES Name**

**1.     Defendants' Businesses**

33.     Defendant Yota, LLC claims it is a business involved in consulting and licensing, focused on the alcohol, food products, pet foods, and cannabis industries.

34.     Upon information and belief, the individual Defendants, control and direct all aspects of the Yota, LLC businesses, including the adoption, alleged use in commerce of products and services using the "High Times" name and the applications for PTO registration of the "High Times" name as trademarks for products and services Yota, LLC, claims to sell.

35.     Upon information and belief, the individual Defendants, Ryan Cohen and David Cohen, participate in, and intend to benefit directly or indirectly from, Defendant Yota, LLC's actions such that the individual Defendants are, at all times relevant, acting through Defendant Yota, LLC, and Defendant Yota's actions may be ascribed to the individual Defendants.

36.     Upon information and belief, none of Defendants' claimed use of the "High Times" name as a mark for various products and services occurred prior to 2023.

37.     Defendant Yota identifies itself "as a leader win business development, intellectual property and licensing" with a "profound understanding of the Japanese market complements our broad capabilities, enabling us to navigate complex regulatory and business landscapes effectively." *See*, https://yotallc.net/about-us/, visited September 2, 2025.

38.     Defendant Yota promotes itself, as a "consultancy" that "specialize[s] in the technology and cannabis sector. . . ." claiming: "We have expertise in every facet of the industry, from intellectual property and master growers to supply chain management, collaborating with some of the biggest names." *See,* https://yotallc.net/about-us/, visited September 2, 2025.

39.     Upon information and belief, Defendant Yota, LLC, directed by the individual Defendants, "serves as a holding company, managing an extensive portfolio of trademarks in Japan, Mexico, and the United States." *See,* https://yotallc.net/about-us/, visited September 2, 2025.

40.     Upon information and belief, the date of creation of the registration of the domain name www.yotallc.net is February 26, 2024.

41.     Defendants' claim to sell, or offer for sale, alcoholic beverages, smoking products, pet products, non-alcoholic beverages, food products, and skincare products using the "High Times" name ("Defendants' 'High Times' Branded Products").

42.     Defendants' "High Times" Branded Products appear on a website using the www.harmonyhubspot.com domain name See **Appendix G** (The Harmony Hubspot Website https://harmonyhubspot.com/).

43.     The Harmony Hubspot Website promotes, on its home page: "High Times™ Products!" The Harmony Hubspot Website also states: "Discover High Times™ branded products like you've never seen them before, offering an unparalleled mix of quirky charm and wholesome goodness for your ultimate chill."

44.     The Harmony Hubspot Website includes, on several webpages, the following notation: "Yota, LLC. Licensor of the High Times™ brand in select product categories."

45.     **Appendix F** depicts Defendants' "High Times" Branded Products for sale on the Harmony Hotspot Website**.**

46.     The date of creation of the registration of the Harmony Hubspot Website, on which Defendants offer for sale their High Times branded products and services, is March 17, 2024.

2.     **Defendants' Registered HIGH TIMES® Marks**

47.     Defendant Yota, LLC is the record owner of the PTO registrations of HIGH TIMES as the marks for the products and services identified on the chart attached as **Appendix H** ("Defendants' Registered HIGH TIMES® Marks")

### 3.   Defendants' Applications for Registration of HIGH TIMES Marks

48.     Defendant Yota is the applicant of record for the pending applications for PTO registration of HIGH TIMES as a trademark for the various goods and services shown in the chart attached as **Appendix I** ("Defendants' Applications for PTO Registrations").

### C.  Likelihood of Confusion with Plaintiff's Family of HIGH TIMES Marks

49.     The goods and services purportedly sold by Defendants using the HIGH TIMES name, if actually sold and offered for sale in U.S. commerce, are sold and offered for sale under such circumstances that purchasers, and potential purchasers of those goods and services mistakenly believe, or are reasonably likely to believe mistakenly, that those goods and services originate from the same source as the goods and services identified by marks in Plaintiff's Family of HIGH TIMES Marks.

50.     Plaintiff established, and maintains, common law rights to Plaintiff's Family of "HIGH TIMES" Marks created long before the filing date of Defendants' Application for the "HIGH TIMES" Marks and before any date of first use or other priority date that Defendants may attempt to prove for the "HIGH TIMES" Mark.

51.     Upon information and belief, Defendants first used the Defendants High Times Names, and each of them, in commerce to identify Defendants' business and Defendants' High Times-Named Products several years, and even decades, after Plaintiff was already using the HIGH TIMES® Marks in commerce to identify the HIGH TIMES Brand Products and Services provided by Plaintiff.

52.     Moreover, the filing date of the applications for all of Plaintiff's Family of Registered "HIGH TIMES®" Marks precede the filing date for Defendants' Application for the "HIGH TIMES" Marks, both registered and currently pending, and any date of first use that Respondent may attempt to prove.

### 1.   Substantial Similarity of Defendants' High Times Phrase to Plaintiff's Marks

53.     Defendants' use of the phrase High Times (Defendants' "High Times Names") for each of its High Times Products and Services is identical to Plaintiff's family of "HIGH TIMES" marks.

8

54.    The phrase "High Times" in Defendants' High Times Names is identical in pronunciation, meaning and suggestion to the word "High Times" in the Family of HIGH TIMES Marks used by Plaintiff.

55.    The predominant use of the identical phrase "High Times" causes the overall commercial impression of Defendants' High Times Names to be significantly similar in sound and meaning and overall commercial impression to the Family of HIGH TIMES Marks used by Plaintiff.

### 2.    Proximity of Goods and Services

56.    The goods and services listed in the registrations of Defendants' Registered HIGH TIMES® Marks are closely related in purpose and function, and/or complementary in use to, many of the goods and services identified by marks in Plaintiff's Family of HIGH TIMES Marks and that are sold or provided by Plaintiff using the marks in Plaintiff's Family of HIGH TIMES Marks.

57.    The goods and services listed in Defendants' Applications for PTO Registrations are closely related in purpose and function, and/or complementary in use to, many of the goods and services identified by marks in Plaintiff's Family of HIGH TIMES Marks and that are sold or provided by Plaintiff using the marks in Plaintiff's Family of HIGH TIMES Marks.

58.    Defendants' High Times-Named Products are competitive with, or at least complementary in purpose and function to, the HIGH TIMES Brand Products and Services provided by Plaintiff.

### 3.    Channels of Trade

59.    Upon information and belief, the goods and services identified in the PTO Registration of Defendants' Registered HIGH TIMES® Marks are and will be marketed under such conditions that they are likely to be encountered by the same purchasers of Plaintiff's goods and services sold and provided using Plaintiff's Family of HIGH TIMES Marks.

60.    Upon information and belief, the channels of distribution employed by Plaintiff and Defendant are, or are likely to be, similar, even overlapping, adding to the likelihood that the goods and services sold by Defendants using Defendants' HIGH TIMES Marks will be confused with the Plaintiff's goods and services sold using marks in Plaintiff's Family of HIGH TIMES Marks.

61.     On information and belief, Defendants' High Times-Named Products and Services are, or will be, sold through online stores and via advertising in publications.

### 4.    Purchasing Decisions

62.     Upon information and belief, the classes of purchasers to whom Plaintiff and Defendant sell, or will sell, are the same, adding to the likelihood that consumers who purchase Defendants' goods and services sold using Defendants' High Times Marks will do so under the mistaken impression that they originate with, are endorsed by, or are otherwise connected to Plaintiff's goods and services sold using marks in Plaintiff's Family of HIGH TIMES Marks.

63.     On information and belief, Defendants' High Times-Named Products and Services are marketed in the same channels of trade as the HIGH TIMES Brand Products and Services produced and sold by Plaintiff.

64.     Upon information and belief, customers who purchase Defendants' High Times-Named Products and Services are not likely to exercise more than an ordinary degree of care in making their decision whether to purchase Defendants' High Times-Named Products and Services.

### 5.    Defendants' Intent

65.     When Defendants adopted names using the phrase "HIGH TIMES" for Defendants' High Times-Named Products and Services, Defendants had, at least, constructive notice of Plaintiff's Registered HIGH TIMES® Marks.

66.     Upon information and belief, when Defendants adopted names using the phrase "HIGH TIMES" for Defendants' High Times-Named Products and Services, Defendants had actual knowledge of the HIGH TIMES Marks, including the Registered HIGH TIMES® Marks now used by Plaintiff and used previously by Plaintiff's predecessor.

67.     When Defendants first used the phrase "HIGH TIMES" to identify or promote Defendants' High Times-Named Products and Services, Defendants had, at least, constructive knowledge of the Registered HIGH TIMES® Marks used by Plaintiff.

68.     Upon information and belief, when Defendants first used the phrase "HIGH TIMES" to identify or promote Defendants' High Times-Named Products and Services, Defendant

had actual knowledge of the Plaintiff's HIGH TIMES Marks, including Plaintiff's Registered HIGH TIMES® Marks, used by Plaintiff to sell its HIGH TIMES Brand Products and Services.

### 6. Strength of Plaintiff's Marks

69.     Plaintiff's HIGH TIMES Marks, including Plaintiff's Registered HIGH TIMES® Marks, when used by Plaintiff to sell its HIGH TIMES Brand Products and Services are inherently distinctive.

70.     Upon information and belief, Plaintiff's HIGH TIMES Magazine has reached readers across the United States.

71.     Upon information and belief, and as shown by, *inter alia*, Appendix D (High Times Wikipedia Page), Plaintiff's HIGH TIMES businesses, including Plaintiff's Registered HIGH TIMES® Marks receive widespread public media coverage.

72.     Upon information and belief, Plaintiff's HIGH TIMES Brand Products and Services have had, and continue to have, success in sales across the United States, both in retail and online purchasing.

### 7. Plaintiff's Opportunities for Expansion

73.     Plaintiff's predecessor-in-interest expanded its use of the HIGH TIMES Family of Marks between 1974 to 2024, moving from magazines to podcasts, and adding merchandise, educational and cultural events, and smoking accessories.

74.     Plaintiff presently intends to continue expanding the use of the HIGH TIMES Family of Marks, to include additional products and services beyond merchandise, podcasts, magazines, and events.

75.     The similarities in the marks, the relatedness and complementary nature of the goods and services, and the overlap of trade channels and customers for these goods are so great as to create a likelihood of consumer confusion as to whether Defendants' goods and services share an origination, affiliation, association or sponsorship with Plaintiff.

76.     Upon information and belief, Defendant is using, and has used, the High Times Names intentionally to trade upon the goodwill and substantial recognition associated with

Plaintiff's HIGH TIMES Brand Products and Services offered under the HIGH TIMES Marks, including the Registered HIGH TIMES® Marks, used by Plaintiff.

77.     Upon information and belief, Defendants are using, and have used, the phrase "HIGH TIMES" to identify or promote Defendants' High Times-Named Products and Services intentionally to trade upon the goodwill and substantial recognition associated with Plaintiff's HIGH TIMES Brand Products and Services offered under the HIGH TIMES Marks, including the Registered HIGH TIMES® Marks, used by Plaintiff.

78.     Upon information and belief, Defendants are using, and have used, the HIGH TIMES Names and the phrase "HIGH TIMES" falsely to associate Defendants' High Times-Named Products and Services with Plaintiff and its HIGH TIMES Products and Services.

79.     Upon information and belief, Defendants are using, and have used, the HIGH TIMES Names and the phrase "HIGH TIMES" intentionally to cause consumer confusion, mistake or deception regarding the origin, association or sponsorship of Defendants' High Times-Named Products.

80.     Upon information and belief, Defendants uses, and have used, the HIGH TIMES Names and the phrase "HIGH TIMES" to cause consumers and potential consumers to believe erroneously that Defendants' High Times-Named Products and Services are associated with Plaintiff.

**D.  Dilution of Plaintiff's HIGH TIMES® Registered Marks**

81.     Plaintiff's family of HIGH TIMES Marks are valid, protectable trademarks and include Plaintiff's Registered HIGH TIMES® Marks.

82.     Plaintiff's family of HIGH TIMES Marks are famous; the general consuming public widely recognizes Plaintiff's Family of HIGH TIMES Marks as a designation of source of goods and services of Plaintiff, the owner of Plaintiff's Family of HIGH TIMES Marks.

83.     Plaintiff's Family of HIGH TIMES Marks have been used in U.S. commerce continuously since 1974.

84.     Plaintiff's HIGH TIMES® Marks have been the subject of articles written on sites like Wikipedia.

85.        Prior to Defendants' purported use of the HIGH TIMES name, few others have used or attempted to use the High Times name to identify products or services other than those products and services that are part of Plaintiff's HIGH TIMES Products and Services.

86.        Plaintiff's Family of HIGH TIMES Marks are inherently distinctive for Plaintiff's goods and services identified by those Marks.

87.        Plaintiff's Family of HIGH TIMES Marks are visually, aurally and in overall commercial impression identical to Defendant's HIGH TIMES Marks.

88.        Defendants adopted and began their use of the HIGH TIMES name 43 years after the adoption and use in the U.S of the oldest member of Plaintiff's Family of HIGH TIMES Marks.

89.        Defendants adopted and began their use of the HIGH TIMES name after Plaintiff's registration of each of Plaintiff's Registered HIGH TIMES® Marks.

**E.  Defendants' Cancellation Proceedings**

90.        Defendants filed in December 2024 and January 2025 petition in the Trademark Trial and Appellate Board ("TTAB")  to cancel the registrations of Plaintiff's Registered HIGH TIMES® Marks shown in the chart attached as **Appendix J** ("Defendants' Cancellation Proceedings").

91.        The TTAB consolidated Defendants' Cancellation Proceedings on March 31, 2025.

92.        Defendants' Cancellation Proceedings seeks cancellation of the PTO registration of the named Plaintiff's Registered HIGH TIMES® Marks based allegations that the owner of the registrations have abandoned use of the HIGH TIMES® Marks.

93.        Defendants' Cancellation Proceedings do not allege any other specific factual basis in support of the cancellation claims.

94.        Plaintiff's Registered HIGH TIMES® Marks were the subject of bankruptcy proceedings and a receivership throughout 2024 and until June 10, 2025.

95.        Since acquiring Plaintiff's Registered HIGH TIMES® Marks Plaintiff has taken concrete steps to resume use of Plaintiff's Registered HIGH TIMES® Marks in commerce nationally.

96.    Plaintiff has resumed publication of the HIGH TIMES® Magazine as of September, 2025.

97.    Plaintiff has introduced new HIGH TIMESTM branded smoking accessories as of August, 2025.

98.    Plaintiff has published new editions of HIGH TIMES® audio and video recordings and podcasts as of August, 2025.

**F.    Defendants' Fraudulent Applications to the PTO**

99.    Defendant Yota filed the applications for PTO registration of "HIGH TIMES" as a mark for various products and services, shown on **Appendix I** ("Defendants' Applications for PTO Registration of HIGH TIMES Marks")

100.    Defendant Yota falsely claimed, via declarations or Statements of Use filed in connection with three of Defendants' Applications for PTO Registration of HIGH TIMES® Marks, that Plaintiff was, at the times of the declarations or Statements of Use, using the HIGH TIMES name in commerce on the respective products or services.

101.    For each of the three registrations below, Defendant Yota knew that the declarations or Statements of Use were false when the statements were filed with the PTO.

102.    Further, as stated below, Defendant Yota's declarations or Statements of Use were material to the PTO's registration of the applied-for marks.

103.    Further, Defendant Yota intended that the PTO would rely on Defendant Yota's declarations and Statements of Use submitted with its applications.

104.    The PTO actually relied upon the false statements in Defendant Yota's declarations and Statements of Use, and registered each of the three applied-for marks addressed below in reasonable reliance upon Defendant Yota's declarations and Statements of Use.

105.    Plaintiff has been injured by the fraudulent representations made to the PTO, because the now-registered marks are likely to cause confusion with Plaintiff's Family of HIGH TIMES Marks as alleged, *supra*.

DICKINSON WRIGHT PLLC

3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

### 1.    The '593 Registration

106.    Defendants filed on May 10, 2024 application Serial No. 98-543.678 (the "'678 Application") seeking PTO registration of HIGH TIMES as a mark for the following goods: "Brownies; Coffee; Cookies; Honey; Lollipops; Noodles; Pancakes; Pizzas; Popcorn; Sauces; Tea; Waffles; Maple syrup."

107.    Upon information and belief, the images submitted by Defendants as evidence of use of the HIGH TIMES name on foods products do not depict actual photographs of food packaging.

108.    Defendants resubmitted a specimen merely containing advertisements on Defendants' www.hubspot.com website for the types of food products originally included, but without any images of any actual product marked with the HIGH TIMES brand name.

109.    Defendants submitted a Statement of Use with the specimen attesting that the specimen showed the applied-for mark as actually used in commerce.

110.    Upon information and belief, Defendants' Statement of Use with the referenced specimen, attesting that the specimen was an image of the applied-for mark was of an actual product in use in commerce was a false statement.

111.    Upon information and belief, Defendants knew the Statement of Use was false when it was submitted to the PTO.

112.    Upon information and belief, Defendants' false statement that the applied-for mark was in use in commerce was material.

113.    Upon information and belief, Defendants intended that the PTO would rely upon its false Statement of Use in considering whether to grant Defendants applied-for registration for its mark.

114.    Based on the '678 Application and the subsequent Defendants submissions, the PTO issued on July 15, 2025, registration number 7,863,593 of HIGH TIMES as a mark for the following goods: "Brownies; Chocolate; Coffee; Cookies; Honey; Lollipops; Noodles; Pancakes; Pizzas; Popcorn; Sauces; Tea; Waffles; Herbal infusions; Maple syrup."

115.     Upon information and belief, and based on the PTO's registration of Defendants' Mark, the PTO actually and reasonably relied upon Defendants' false Statement of Use.

### 2.    The '052 Registration

116.     Defendants filed on February 13, 2023, Application Serial No. 97-792,551, for PTO registration of HIGH TIMES as a mark for "Mezcal; alcoholic beverages except beers; distilled spirits; liquors, spirits and liqueurs," based on an intent to use the mark for those goods (the "'551 Application").

117.     Defendants filed on July 9, 2024, a Statement of Use, signed by Defendants' counsel stating, in pertinent part, that the specimen was a "website promotion of alcoholic beverages bearing the mark." Defendants included with the Statement of Use images which, upon information and belief, are digital mockups of products Defendants intended to offer. **Appendix K** (Specimen submitted with Statement of Use for '551 Application).

118.     The PTO examining attorney rejected the Statement of Use, stating in a Non-final Office Action dated January 31, 2025, that the specimen appeared to consist of a digitally created or altered image.

119.     Defendants amended Application Serial No. 97-792,551, deleting the intent to use basis, and submitted on February 1, 2025, the following replacement specimen, purportedly showing the HIGH TIMES name on a website advertising liquors, but without the digital images. **Appendix L** (Second Specimen Submitted in support of the '551 Application)

120.     As part of the Response to Office Action related to Application Serial No. 97-792,551, Defendants included a declaration dated February 1, 2025 stating, in pertinent part: that the first "use in commerce" of the HIGH TIMES mark for alcoholic beverages bearing the mark was February 1, 2025. Two of the specimens submitted are shown below, the first is Defendants' Harmony Hubspot webpage submitted as the specimen, and the second appears to be an image of a checkout page for a purchase of hard apple cider. **Appendix L**.

121.     Defendants submitted a Statement of Use with the specimen attesting that the specimen showed the applied-for mark as actually used in commerce.

122.     Upon information and belief, Defendants' Statement of Use with the referenced specimen, attesting that the specimen was an image of the applied-for mark was of an actual product in use in commerce was a false statement.

123.     Upon information and belief, Defendants knew the Statement of Use was false when it was submitted to the PTO.

124.     Upon information and belief, Defendants' false statement that the applied-for mark was in use in commerce was material.

125.     Upon information and belief, Defendants intended that the PTO would rely upon its false Statement of Use in considering whether to grant Defendants applied-for registration for its mark.

126.     The PTO issued Reg. No. 7,812,052, on May 27, 2025, of HIGH TIMES as a mark for "Mezcal; Alcoholic beverages except beers; Distilled spirits; Liquors, spirits and liqueurs" based on Defendants' amended Application Serial No. 97-792,551 and the Defendants Statement of Use filed February 4, 2025.

127.     Upon information and belief, and based on the PTO's registration of Defendants' Mark, the PTO actually and reasonably relied upon Defendants' false Statement of Use.

   **3.     The '000 Registration**

128.     Defendants filed on July 28, 2023, an intent to use application Serial No. 98-106,967 for PTO registration of HIGH TIMES as a trademark for the following products in Class 31 – Cat food; Dog food; Pet food.   (the "'967 Application")

129.     The '967 Application claimed a September 2, 2024 date of first use in commerce of the mark for those products.

130.     Defendants filed with the '967 Application as evidence of use specimens purportedly showing images of pet food which appear to have been digitally created. **Appendix M** (specimen submitted in support of '967 Application).

131.     Defendants submitted a Statement of Use with the specimen attesting that the specimen showed the applied-for mark as actually used in commerce.

DICKINSON**WRIGHT**PLLC

3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

132.    Upon information and belief, Defendants' Statement of Use with the referenced specimen, attesting that the specimen was an image of the applied-for mark was of an actual product in use in commerce was a false statement.

133.    Upon information and belief, Defendants knew the Statement of Use was false when it was submitted to the PTO.

134.    Upon information and belief, Defendants' false statement that the applied-for mark was in use in commerce was material.

135.    Upon information and belief, Defendants intended that the PTO would rely upon its false Statement of Use in considering whether to grant Defendants applied-for registration for its mark.

136.    The PTO issued to Defendants on November 5, 2024, the '000 Registration of HIGH TIMES as a mark for cat food, dog food and other pet food.

137.    Upon information and belief, the images submitted are digital renderings and not actual photographs showing the products in use in commerce.

138.    Upon information and belief, and based on the PTO's registration of Defendants' Mark, the PTO actually and reasonably relied upon Defendants' false Statement of Use.

## COUNT I
### (Trademark Infringement—15 U.S.C. § 1114)

139.    Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

140.    Plaintiff is the owner of the Plaintiff's Family of Registered HIGH TIMES® Marks.

141.    Plaintiff's Family of Registered HIGH TIMES® Marks are valid, protectable trademarks.

142.    Without the consent of Plaintiff, Defendants use, and has used, in commerce a colorable imitation of the marks in Plaintiff's Family of Registered HIGH TIMES® Marks in connection with the selling, offering for sale, distributing and/or advertising of Defendants' High Times-Named Products.

18

143.    Plaintiff's first use of the marks in Plaintiff's Family of Registered HIGH TIMES® Marks precedes the first use date of Defendants' imitation of the marks in Plaintiff's Family of Registered HIGH TIMES Marks in connection with the selling, offering for sale, distributing and/or advertising of Defendants' High Times - Named Products and Services.

144.    Without the consent of Plaintiff, Defendants filed Defendants' Applications for PTO Registrations for PTO registration of the phrase "High Times" as a mark for "Defendants High Times Products and Services.

145.    The filing date of the applications for each mark in Plaintiff's Family of Registered HIGH TIMES® Marks precedes the filing date for each of Defendants' Applications for PTO registration of the HIGH TIMES Mark.

146.    Defendants' acts have actually caused, or are likely to cause, confusion, mistake, or deception among the relevant public over whether Defendants' High Times - Named Products, marketed and sold using Defendants High Times - Names, have their source or origin with Plaintiff or are in some manner approved or sponsored by, associated or connected with, Plaintiff and its HIGH TIMES Brand Products and Services identified by the Registered HIGH TIMES® Marks.

147.    Defendant use of the name High Times to identify or promote Defendants' High Times -Named Products and Services is further deceiving the relevant public into the mistaken belief that Defendants' High Times - Named products and Services have their source or origin with Plaintiff or are in some manner approved by, associated with, sponsored by or connected with Plaintiff.

148.    Defendants' acts, undertaken without the consent of Plaintiff, infringe Plaintiff's rights in the Plaintiff's Family Registered HIGH TIMES® Marks.

149.    Upon information and belief, Defendants' actions were undertaken willfully, and with the intent to confuse and deceive the public.

150.    Defendants' acts damage, and will continue to damage, Plaintiff's business, reputation and goodwill.

151.    Defendants' act interfere, and have interfered, and will continue to interfere, with Plaintiff's use of the Plaintiff's Family of Registered HIGH TIMES® Marks and the sale of the HIGH TIMES Brand Products and Services.

152.    Defendant has caused, and unless enjoined, will continue to cause, irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

153.    Due to the likelihood of confusion caused by Defendants' Registrations, and each of them, each of Defendants' Registration is subject to cancellation pursuant to 15 U.S.C. § 1064.

154.    Pursuant to 15 U.S.C. § 1116, Defendant should be permanently enjoined from using the High Times Names, or any variant thereof, or otherwise infringing on Plaintiff's trademark rights in the Plaintiff's Family of Registered HIGH TIMES® Marks.

155.    Pursuant to 15 U.S.C. § 1119, the Registration of Defendants' HIGH TIMES® Marks set forth in **Appendix H**, and each of them, should be cancelled.

156.    Pursuant to 15 U.S.C. § 1119, Defendants' Applications for registration of the HIGH TIMES Marks which has not yet been registered with the PTO, and each of them, should be refused, including:

    i.    The '938 Application (tobacco and tobacco substitutes; wicks for cigarette lighters; filter tips; hookah pipes; electronic hookah pipes; smokers' articles in the nature of electronic cigarettes and oral vaporizers for smokers, namely vape pens, e-vaporizers, and e-cigarettes; all of the foregoing exclusively for use with cannabis products solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis)

    ii.    The '953 Application (digital media an motion picture film production);

    iii.    The '744 Application (computerized online ordering featuring general consumer merchandise);

iv.    The '995 Application (Organization of entertainment exhibition events; Organization of exhibitions for cultural or educational purposes; Organizing and hosting events for educational purposes; Organizing events in the field of cannabis for cultural or educational purposes);

v.    The '116 Application (incense; essential oils; herbal extracts, other than essential oils, sold as an integral component of cosmetics; all the foregoing containing ingredients solely derived from hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent);

vi.    The '718 Application (Downloadable software in the nature of a mobile application for providing a virtual marketplace);

vii.    The '764 Application (Providing on-line chat rooms and electronic bulletin boards);

viii.    The '995 Application (Organization of entertainment exhibition events; Organization of exhibitions for cultural or educational purposes; Organizing and hosting of events for cultural purposes; Organizing events in the field of cannabis for cultural or educational purposes);

ix.    The '537 Application (Printed publications; Clothing); and

x.    The '919 Application (Streaming of video and audio material on the Internet).

157.    Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendant:

a.    All profits received by Defendant from its use of the High Times Names or variants thereof;

b.    Damages sustained by Plaintiff due to Defendants' use of the High Times Names, including the cost of corrective advertising;

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

c.    Exceptional damages for intentional infringement, bad faith, and willful misconduct, equal to three times profits or damages, whichever is greater; and

d.    All costs of this action, including attorneys' fees.

158.    Pursuant to 15 U.S.C. § 1118, Plaintiff is also entitled to an order compelling Defendant to destroy all materials bearing High Times Names, or variants thereof, including Defendants' High Times-Named Products or other products or services related to Defendants' High Times-Named Products.

## COUNT II
### (False Designation of Origin – 15 U.S.C. § 1125(a))

159.    Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

160.    Plaintiff is the owner of Plaintiff's Family of HIGH TIMES Marks.

161.    The marks in Plaintiff's Family of HIGH TIMES Marks are valid, protectable trademarks.

162.    Without the consent of Plaintiff, Defendant uses, and has used, in commerce a colorable imitation of the marks in Plaintiff's Family of HIGH TIMES Marks in connection with the selling, offering for sale, distributing and/or advertising of Defendants' High Times-Named Products and Services.

163.    Defendant use of the HIGH TIMES name  to identify or promote Defendants' products and services is deceiving, or is likely to deceive, the relevant public into the mistaken belief that Defendants' products and services have their source or origin with Plaintiff or are in some manner approved by, associated with, sponsored by or connected with Plaintiff.

164.    Defendants' use of the HIGH TIMES Name in commerce to identify Defendants' products and services causes, or is likely to cause, confusion, mistake and deception over whether Defendants' products and services share an origination, association, sponsorship or affiliation with Plaintiff's HIGH TIMES Products and Services.

165.    On information and belief, Defendant has infringed on Plaintiff's trademark rights with the intent to: compete against Plaintiff, trade on Plaintiff's reputation and goodwill by causing

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

consumer confusion and mistake and deceive the public into believing that Defendants' products and services are associated with, sponsored by, or approved by Plaintiff, when they are not.

166.     On information and belief, Defendant had actual knowledge of Plaintiff's ownership and prior use of the Plaintiff's Family of HIGH TIMES Marks and, without Plaintiff's consent, willfully violated 15 U.S.C. § 1125(a).

167.     Defendants' acts have damage, and will continue to damage, Plaintiff's business, reputation and goodwill, and interfere, and will continue to interfere, with Plaintiff's use of the Plaintiff's Family of HIGH TIMES Marks and the sale of the Plaintiff's HIGH TIMES Brand Products and Services.

168.     Defendant has caused, and unless enjoined, will continue to cause, irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

169.     Pursuant to 15 U.S.C. § 1116, Defendant should be permanently enjoined from using the High Times Names, or any variant thereof, or otherwise infringing on Plaintiff's trademark rights in Plaintiff's Family of HIGH TIMES Marks.

170.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendant:

    a.     All profits received by Defendant from its use of High Times Names or variants thereof;

    b.     Damages sustained by Plaintiff due to Defendants' use of High Times Names, including the cost of corrective advertising;

    c.     Exceptional damages for intentional infringement, bad faith, and willful misconduct, equal to three times profits or damages, whichever is greater; and

    d.     All costs of this action, including attorneys' fees.

171.     Pursuant to 15 U.S.C. § 1118, Plaintiff is also entitled to an order compelling Defendant to destroy all materials bearing High Times Names, or variants thereof, including Defendants' High Times-Named Products and Services or other products or services related to Defendants' High Times-Named Products and Services.

23

## COUNT III
### (Dilution by Blurring – 15 U.S.C. § 1125(c)(2)(B))

172.     Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

173.     Plaintiff is the owner of Plaintiff's Family of HIGH TIMES Marks.

174.     Plaintiff's family of HIGH TIMES Marks are valid, protectable trademarks and include Plaintiff's Registered HIGH TIMES® Marks.

175.     Plaintiff's family of HIGH TIMES Marks are famous; the general consuming public widely recognizes Plaintiff's Family of HIGH TIMES Marks as a designation of source of goods and services of Plaintiff, the owner of Plaintiff's Family of HIGH TIMES Marks.

176.     Plaintiff's Family of HIGH TIMES Marks have been used in U.S. commerce continuously since 1974.

177.     Plaintiff's HIGH TIMES® Marks have been the subject of articles written on sites like Wikipedia.

178.     Prior to Defendants' purported use of the HIGH TIMES name, few others have used or attempted to use the High Times name to identify products or services other than those products and services that are part of Plaintiff's HIGH TIMES Products and Services.

179.     Plaintiff's Family of HIGH TIMES Marks are inherently distinctive for Plaintiff's goods and services identified by those Marks.

180.     Plaintiff's Family of HIGH TIMES Marks are visually, aurally and in overall commercial impression identical to Defendant's HIGH TIMES Marks.

181.     Defendants adopted and began their use of the HIGH TIMES name 43 years after the adoption and use in the U.S of the oldest member of Plaintiff's Family of HIGH TIMES Marks.

182.     Defendants adopted and began their use of the HIGH TIMES name after Plaintiff's registration of each of Plaintiff's Registered HIGH TIMES® Marks.

183.     Defendants' use of the HIGH TIMES name is likely to cause dilution of Plaintiff's mark.

184.     Defendants promote themselves as providers of services to the cannabis industry.

24

185.    Defendants promote themselves as selling products related to the cannabis industry.

186.    Defendants' HIGH TIMES Marks are aurally and in overall impression similar to Plaintiff's HIGH TIMES® Marks.

187.    Defendants' HIGH TIMES Marks are the identical words as Plaintiffs' HIGH TIMES® Marks.

188.    Defendant promotes itself as a provider of services in the cannabis industry, again very similar to Plaintiff's primary industry

189.    Defendants' acts have damaged, and will continue to damage, Plaintiff's business, reputation and goodwill, and interfere, and will continue to interfere, with Plaintiff's use of the Plaintiff's Family of HIGH TIMES Marks and the sale of the Plaintiff's HIGH TIMES Brand Products and Services.

190.    Defendants have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

191.    Pursuant to 15 U.S.C. § 1116, Defendants should be permanently enjoined from using the High Times Names, or any variant thereof, or otherwise infringing on Plaintiff's trademark rights in Plaintiff's Family of HIGH TIMES Marks.

192.    Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants:

    a.    All profits received by Defendants from use of High Times Names or variants thereof;

    b.    Damages sustained by Plaintiff due to Defendants' use of High Times Names, including the cost of corrective advertising;

    c.    Exceptional damages for intentional infringement, bad faith, and willful misconduct, equal to three times profits or damages, whichever is greater; and

    d.    All costs of this action, including attorneys' fees

193.    Pursuant to 15 U.S.C. § 1118, Plaintiff is also entitled to an order compelling Defendants to destroy all materials bearing High Times Names, or variants thereof, including

Defendants' High Times-Named Products and Services or other products or services related to Defendants' High Times-Named Products and Services.

## COUNT IV
### (Declaratory Judgment on Claims in Defendants' Cancellation Actions)

194.     Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

195.     Defendants' TTAB cancellation petitions seeking cancellation of Plaintiff's HIGH TIMES® Registered Marks identified on **Appendix J**.

196.     Contrary to the allegations in Defendants' Cancellation Petitions, Plaintiff has not abandoned Plaintiff's Registered HIGH TIMES® Marks and the marks have been in continuous use from 1974 through 2024.

197.     Plaintiff has resumed and plans to continue to use in U.S. commerce the Registered HIGH TIMES® Marks Defendants allege were abandoned.

198.     Pursuant to 22 U.S.C. §2201, the Court should declare that Plaintiff's Registered HIGH TIMES® Marks, challenged by Defendant in the Cancellation Proceedings are in use, and have not been abandoned.

## COUNT V
### (Cancellation of Certain PTO Registrations of Defendants' HIGH TIMES Marks for Fraud in the Application – 15 U.S.C. §1120)

199.     Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

200.     Defendant Yota filed Defendants' Applications for PTO Registration of HIGH TIMES® Marks and supported those applications with either a declaration of use and purported evidence of use submitted with the application, or with a subsequently filed Statement of Use and purported evidence of use.

201.     Upon information and belief, the purported evidence of use submitted with the Statements of Use and declarations of use did not show actual use in U.S. commerce of the applied-for mark and thus were not truthful.

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

202.     Upon information and belief, Defendants knowingly submitted a false representation of material fact when Defendants submitted its evidence of use with its Statements of Use and declarations of use.

203.     Upon information and belief, Defendants' false Statement of Use and declarations of use were false representations of use in commerce.

204.     Upon information and belief, Defendants submitted the purported evidence of use and the false representations of use in commerce, with the intent to induce the PTO to reply upon the misrepresentations and register the applied-for marks.

205.     Upon information and belief, the PTO actually and reasonably relied on Defendants' misrepresentations regarding their purported evidence of use of the marks in commerce that Defendants' Statements of Use and declarations of use.

206.     The PTO registrations fraudulently obtained by Defendant Yota, LLC are likely to cause customer confusion with Plaintiff's valid and enforceable HIGH TIMES® Registered Marks, as set forth above and incorporated herein.

207.     Due to the likelihood of confusion, Plaintiff has suffered damages from Defendants' registration of the fraudulently obtained marks. Pursuant to 15 U.S.C. §1120, the Court should declare that Plaintiff's Registered HIGH TIMES® Marks are cancelled for fraud in the application.

**COUNT VI**
**(State Trademark Infringement Under N.R.S. 600.420)**

208.     Plaintiff re-alleges and incorporates by reference all allegations contained in the above paragraphs of this Amended Complaint, as though fully set forth herein.

209.     This cause of action is for trademark infringement of Plaintiff's State Registered HIGH TIMES® Mark under the Nevada Revised Statutes 600.420, et seq.

210.     Plaintiff has a protectable interest in Plaintiff's State Registered HIGH TIMES® Mark as detailed above.

211.     Defendants' products and services are, or will be, marketed under such conditions that they are likely to be encountered by the same purchasers of Plaintiff's goods and services sold

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

and provided using Plaintiff's State Registered HIGH TIMES® Mark.

212.    Defendants have deliberately and willfully attempted to trade on Plaintiff's long-standing and hard-earned goodwill in its Plaintiff's State Registered HIGH TIMES® Mark, and the reputation Plaintiff has established in connection with its high-quality products.

213.    Defendants have also deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of Defendants' High Times-Named Products and Services and to pass them off as those of products made by Plaintiff and identified by its State Registered HIGH TIMES® Mark.

214.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products offered under the Plaintiff's State Registered HIGH TIMES® Mark, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants without permission or approval of Plaintiff.

215.    By its actions, Defendants have infringed Plaintiff's State Registered HIGH TIMES® Mark deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by Plaintiff's State Registered HIGH TIMES® Mark.

216.    Defendants' conduct is likely to cause appreciable confusion, mistake, or deception as to the affiliation, connection or association of Defendants' Defendants' High Times-Named Products and Services with the HIGH TIMES Branded Products produced and sold by Plaintiff, and as to the origin, sponsorship, or approval of Defendants' Defendants' High Times-Named Products and Services with HIGH TIMES Branded Products produced and sold by Plaintiff, all in violation of Nevada common law.

217.    On information and belief, Defendant's use of the "High Times" Name and Defendants' High Times-Named Products and Services injures Plaintiff's commercial interest in its reputation and reduces Plaintiff's sales of its products.

218.    As a result of Defendant's conduct, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in Plaintiff's State Registered HIGH TIMES® Mark.

219.    The economic and reputation injury occur due to the similarity of the Defendants'

28

High Times-Named Products and Services, or variants thereof, to the Plaintiff's State Registered HIGH TIMES® Mark.

220.    Defendants' use of the Defendants' High Times-Named Products and Services confuse and/or deceive consumers and that confusion and/or deception causes them to withhold trade from Plaintiff by purchasing Defendants' products instead of Plaintiff's competing products.

221.    Defendants' use of the Defendants' High Times-Named Products and Services, or variants thereof, creates the false impression that Defendants' products originate from the same source as Plaintiff's directly competitive products.

222.    The false impression created by Defendants' use of the Defendants' High Times-Named Products and Services, or variants thereof, has an/or will, upon information and belief, lead consumers to purchase Defendants' products on the erroneous belief that Defendants' products are the same as, or equivalent to, Plaintiff's products.

223.    On information and belief, Defendants each have or have had the right and ability to supervise and/or control the infringing activities of one another.

224.    On information and belief, Defendants have each directly benefitted financially from the other's infringing activity.

225.    Defendants knew or had reason to know of each other's infringing activity and intentionally induced or materially contributed to that infringing activity.

226.    Defendants' intent to induce the infringing activity is, upon information and belief, demonstrated by affirmative steps taken by each to encourage the other's activity in infringement of Plaintiff's Family of HIGH TIMES® Marks.

227.    As a result, Defendants are liable for contributory infringement to the extent either is not liable for direct infringement of Plaintiff's State Registered HIGH TIMES® Mark.

228.    Thus, Plaintiff is entitled to recover an amount equivalent to the amount of profits that Defendants have derived, and may continue to derive, as a result of their unlawful misappropriation and infringement of Plaintiff's State Registered HIGH TIMES® Mark.

229.    Defendants' conduct as described above has been willful, deliberate, malicious, and with intent to injure Plaintiff. Therefore, Plaintiff is also entitled to recover exemplary damages

from Defendants in an amount sufficient to punish Defendants and to deter them and others from engaging in similar wrongful conduct in the future.

230.    Defendants have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

231.    Pursuant to NRS 600.430, Defendant should be permanently enjoined from using the High Times Names, or any variant thereof, or otherwise infringing on Plaintiff's trademark rights in Plaintiff's State Registered HIGH TIMES® Mark.

232.    Pursuant to NRS 600.430, Plaintiff is entitled to recover from Defendant:

    a.    All profits received by Defendant from its use of  High Times Names or variants thereof;

    b.    Trebled damages on all profits derived from the willful and wrongful acts of Defendants and treble damages on all damages suffered by reason of these acts; and

    c.    All costs of this action, including attorneys' fees, awarded to Plaintiff as the prevailing party.

233.    Pursuant to NRS 600.430, Plaintiff is also entitled to an order compelling Defendants to deliver for destruction to an officer of the Court or Plaintiff all materials bearing High Times Names, or variants thereof, including Defendants' High Times-Named Products and Services or other products or services related to Defendants' High Times-Named Products and Services.

## COUNT VI
### (Nevada Common Law Trademark Infringement And Unfair Competition)

234.    Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

235.    Plaintiff re-alleges and incorporates by reference all allegations contained in the above paragraphs of this Amended Complaint, as though fully set forth herein.

236.    This cause of action for trademark infringement and unfair competition arises under the common law of the State of Nevada.

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

237.    Plaintiff has a protectable interest in the distinctive HIGH TIMES® Marks as detailed above.

238.    Defendants' products and services will be marketed under such conditions that they are likely to be encountered by the same purchasers of Plaintiff's goods and services sold and provided using Plaintiff's Family of HIGH TIMES Marks.

239.    Defendants have deliberately and willfully attempted to trade on Plaintiff's long-standing and hard-earned goodwill in its HIGH TIMES® Marks, and the reputation Plaintiff has established in connection with its high-quality products.

240.    Defendants have also deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of Defendants' High Times-Named Products and Services and to pass them off as those of products made by Plaintiff and identified by its HIGH TIMES® Marks.

241.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products offered under the HIGH TIMES® Marks, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants without permission or approval of Plaintiff.

242.    By its actions, Defendants have infringed Plaintiff's Family of HIGH TIMES® Marks deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by Plaintiff's HIGH TIMES® Marks.

243.    Defendants' conduct is likely to cause appreciable confusion, mistake, or deception as to the affiliation, connection or association of Defendants' Defendants' High Times-Named Products and Services with the HIGH TIMES Branded Products produced and sold by Plaintiff, and as to the origin, sponsorship, or approval of Defendants' Defendants' High Times-Named Products and Services with HIGH TIMES Branded Products produced and sold by Plaintiff, all in violation of Nevada common law.

244.    On information and belief, Defendant's use of the "High Times" Name and Defendants' High Times-Named Products and Services injures Plaintiff's commercial interest in its reputation and reduces Plaintiff's sales of its products.

245.    As a result of Defendant's conduct, Plaintiff has suffered substantial damages, as

well as the continuing loss of the goodwill and reputation established by Plaintiff in its Family of HIGH TIMES® Marks.

246.    The economic and reputation injury occur due to the similarity of the Defendants' High Times-Named Products and Services, or variants thereof, to the HIGH TIMES® Marks.

247.    Defendants' use of the Defendants' High Times-Named Products and Services confuse and/or deceive consumers and that confusion and/or deception causes them to withhold trade from Plaintiff by purchasing Defendants' products instead of Plaintiff's competing products.

248.    Defendants' use of the Defendants' High Times-Named Products and Services, or variants thereof, creates the false impression that Defendants' products originate from the same source as Plaintiff's directly competitive products.

249.    The false impression created by Defendants' use of the Defendants' High Times-Named Products and Services, or variants thereof, has an/or will, upon information and belief, lead consumers to purchase Defendants' products on the erroneous belief that Defendants' products are the same as, or equivalent to, Plaintiff's products.

250.    On information and belief, Defendants each have or have had the right and ability to supervise and/or control the infringing activities of one another.

251.    On information and belief, Defendants have each directly benefitted financially from the other's infringing activity.

252.    Defendants knew or had reason to know of each other's infringing activity and intentionally induced or materially contributed to that infringing activity.

253.    Defendants' intent to induce the infringing activity is, upon information and belief, demonstrated by affirmative steps taken by each to encourage the other's activity in infringement of Plaintiff's Family of HIGH TIMES® Marks.

254.    As a result, Defendants are liable for contributory infringement to the extent either is not liable for direct infringement of Plaintiff's Family of HIGH TIMES® Marks.

255.    Defendants have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Plaintiff for which there is no adequate remedy at law.

256.    Defendant should be permanently enjoined from using the High Times Names, or

any variant thereof, or otherwise infringing on Plaintiff's trademark rights in Plaintiff's Family of HIGH TIMES Marks

257.    Plaintiff is entitled to recover an amount equivalent to the amount of profits that Defendants have derived, and may continue to derive, as a result of their unlawful misappropriation and infringement of Plaintiff's Family of HIGH TIMES® Marks.

258.    Defendants' conduct as described above has been willful, deliberate, malicious, and with intent to injure Plaintiff. Therefore, Plaintiff is also entitled to recover exemplary damages from Defendants in an amount sufficient to punish Defendants and to deter them and others from engaging in similar wrongful conduct in the future.

## COUNT VII
### (Violation Of The Nevada Deceptive Trade Practices Act
### (N.R.S. 41.600(E) And N.R.S. 598.0915)

259.    Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

260.    Plaintiff owns, has the exclusive right to use and actively uses the Plaintiff's Family of HIGH TIMES® Marks in Nevada.

261.    Defendants' products and services will be marketed under such conditions that they are likely to be encountered by the same purchasers of Plaintiff's goods and services sold and provided using Plaintiff's Family of HIGH TIMES Marks.

262.    As alleged herein, Defendants have, without consent or authorization from Plaintiff, used and continue to use Defendants' High Times – Names in commerce, to sell, offer to sell, import, distribute and/or advertise Defendants' High Times-Named Products and Services.

263.    The similarity between Defendants' use of Defendants' High Times – Names and High Times-Named Products and Services is so great as to be likely to cause confusion, mistake, or deception as to the source or origin of Defendants' products in that the public and others are likely to believe that Defendants' products are manufactured by, promoted by, sponsored by, approved by, licensed by, affiliated with, or in some other way connected with HIGH TIMES® Branded Products produced by Plaintiff.

33

264.    Defendants' unauthorized use of Defendants' High Times-Names is confusingly similar to Plaintiff's distinct and well-known HIGH TIMES® Marks.

265.    On information and belief, Defendants' use of Defendants' High Times-Names and High Times Named Products and Services is confusingly similar to Plaintiff's Family of HIGH TIMES® Marks and HIGH TIMES® Branded Products, which injures Plaintiff's commercial interest in its reputation and reduces Plaintiff's sales of its products.

266.    The economic and reputational injury to Plaintiff of the infringement flow directly from the confusion and/or deception wrought by Defendants' infringement of Plaintiff's trade dress and trademark rights.

267.    The economic and reputational injury occur due to the similarity of the Defendants' High Times – Names and High Times-Named Products and Services to Plaintiff's Family of HIGH TIMES® Marks and HIGH TIMES® Branded Products.

268.    Defendants' use of Defendants' High Times-Names in connection with Defendants' High Times Products and Services constitutes consumer fraud pursuant to NRS 41.600(e) and deceptive trade practices under the Nevada Deceptive Trade Practice Act, NRS 598.0915(1), (2), (3), (7), and (15) because Defendants are intentionally using the Defendants' High Times-Names to trade on Plaintiff's long-standing and hard-earned goodwill in the HIGH TIMES® Marks, as well as to pass off Defendants' High Times-Named Products and Services as those made by Plaintiff and cause confusion, mistake, or deception as to the affiliation, connection or association of Defendants and their goods with Plaintiff's HIGH TIMES® Branded Products and as to whether the origin, sponsorship or approval of Defendants' products are the same as Plaintiff's HIGH TIMES® Branded Products.

269.    Defendants' use of the Defendants' High Times-Names is confusingly similar to the HIGH TIMES® Marks and confuses and/or deceives consumers, and that confusion and/or deception causes them to withhold trade from Plaintiff by purchasing Defendants' products instead of Plaintiff's competing products.

270.    Defendants' use of the Defendants' High Times-Names is confusingly similar to the HIGH TIMES® Mark and creates the false impression that Defendants' products originate

DICKINSON WRIGHT PLLC
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169

from the same source as Plaintiff's directly competitive products.

271.     The false impression created by Defendants use of the High Times – Names is confusingly similar to the HIGH TIMES® Marks and has an/or will, upon information and belief, lead consumers to purchase Defendants' products on the erroneous belief that Defendants' products are the same as, or equivalent to, Plaintiff's products.

272.     Defendants had direct and full knowledge of Plaintiff's prior use and rights in the HIGH TIMES® Marks before the acts complained of herein.

273.     Defendants' unlawful and unfair conduct has led to a material diminution of the reputation and goodwill established by Plaintiff's HIGH TIMES® Marks.

274.     As a result of Defendants aforementioned conduct, Plaintiff has suffered substantial damages, as a well as the continuing loss of the goodwill and reputation established by Plaintiff in its HIGH TIMES® Marks.

275.     This continuing loss of goodwill cannot be properly calculated and, thus, constitutes irreparable harm and an injury for which Plaintiff does not have an adequate remedy at law. Due to the unfair nature of Defendants' actions, Defendants have caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to Plaintiff.

276.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's HIGH TIMES® Marks, thus entitling Plaintiff to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter:

1.     A judgment in favor of Plaintiff and against Defendants on all causes of action alleged herein;

2.     A judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 et seq.;

3.     A judgment that Defendants have willfully violated the provisions of 15 U.S. C. §

1125(a);

    4.    A judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1125(d);

    5.    A permanent injunction, pursuant to 15 U.S.C. 1116, preventing Defendants from:

    a.  Copying, manipulating, reproducing, distributing, selling, displaying, or otherwise using in any manner the HIGH TIMES Phrase on Defendants' Products or other products or services identical or related to Plaintiff Goods and Services;

    b.  Filing, maintaining, or pursuing in any way any application for registration with the PTO or other governmental agency in the United States of the HIGH TIMES phrase and variants thereof as a trademark or service mark for any products or services involving or associated with Plaintiff Goods and Services and any other products or services identical or related to the Plaintiff Goods and Services;

    c.  Using the HIGH TIMES Names or any other identical or similar mark, word, or name as a trademark, service mark, trade name or corporate name in any manner likely to cause confusion, mistake or deception with Plaintiff, the HIGH TIMES Marks or any Plaintiff Goods and Services;

    d.  Notify all customers, distributors, advertisers, and other persons, involved in Defendants' sale of, or attempt to sell, products or services using the High Times Names, that the HIGH TIMES® Marks are owned and controlled exclusively by and for the benefit of Plaintiff;

    e.  Deliver to Plaintiff to be destroyed all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession and bearing the High Times Names (or any other mark, name, or other designation, description, or representation that violates 15 U.S.C. § 1125(a))

DICKINSON WRIGHT PLLC

3883 Howard Hughes Pkwy., Suite 800

Las Vegas, Nevada 89169

or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same;

f.  File with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction, a written report, created and signed under oath, that sets forth in detail the manner and form in which Defendant has complied with the injunction pursuant to 15 U.S.C. § 1116;

6.  Pursuant to 15 U.S.C. § 1118, an order requiring Defendant to deliver and destroy all devices, literature, advertising, goods, products, and other materials bearing the High Times Names, or any other matter that infringes on Plaintiff's rights in the HIGH TIMES Marks;

7.  An accounting for any and all profits derived from Defendants' providing of goods or services through the use of the High Times Names;

8.  Pursuant to 15 U.S.C. § 1117, an award to Plaintiff of:

a.  Defendants' profits and compensatory damages, in an amount to be proven at trial, for the injuries sustained by Plaintiff as a result of the acts complained of herein and that said damages be trebled pursuant to 15 U.S.C. § 1117(b); and

b.  Exemplary damages in an amount sufficient to deter in the future Defendants' willful acts complained of herein;

9.  An order, pursuant to 15 U.S.C. § 1116, directing the Commissioner of Trademarks to cancel the following U.S. Patent and Trademark Office registrations:

a.  Registration number 7,560,859, issued November 5, 2024, of HIGH TIMES as a trademark for Class 32, "Beer," and for Class 33, "Wine; Alcoholic cider;"

b.  Registration number 7,561,000, issued May 27, 2025, of HIGH TIMES as a trademark for Class 31 – "Cat food; Dog food; Pet food;"

c.  Registration number 7,812,052, issued July 9, 2024 for Class 33 – "Mezcal; alcoholic beverages except beers; distilled spirits; liquors, spirits and liqueurs;"

d. Registration number 7,748,786, issued April 1, 2025 for Class 31 – "Dog Biscuits; Edible cat treats; Edible dog treats; Edible pet treats;" and

e. Registration number 7,863,593, issued July 15, 2025 for Class 30 – "Brownies; Coffee; Cookies; Honey; Lollipops; Noodles; Pancakes; Pizzas; Popcorn; Sauces; Tea; Waffles; Maple Syrup."

10.    An order, pursuant to 15 U.S.C. 1116, directing the Commissioner of Trademarks to refuse registration of the U.S. Patent and Trademark Office application numbers:

a. The '938 Application (tobacco and tobacco substitutes; wicks for cigarette lighters; filter tips; hookah pipes; electronic hookah pipes; smokers' articles in the nature of electronic cigarettes and oral vaporizers for smokers, namely vape pens, e-vaporizers, and e-cigarettes; all of the foregoing exclusively for use with cannabis products solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis)

b. The '953 Application (digital media an motion picture film production);

c. The '744 Application (computerized online ordering featuring general consumer merchandise);

d. The '995 Application (Organization of entertainment exhibition events; Organization of exhibitions for cultural or educational purposes; Organizing and hosting events for educational purposes; Organizing events in the field of cannabis for cultural or educational purposes);

e. The '116 Application (incense; essential oils; herbal extracts, other than essential oils, sold as an integral component of cosmetics; all the foregoing containing ingredients solely derived from hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent);

f. The '718 Application (Downloadable software in the nature of a mobile application for providing a virtual marketplace);

g.   The '764 Application (Providing on-line chat rooms and electronic bulletin boards);

h.   The '995 Application (Organization of entertainment exhibition events; Organization of exhibitions for cultural or educational purposes; Organizing and hosting of events for cultural purposes; Organizing events in the field of cannabis for cultural or educational purposes);

i.   The '537 Application (Printed publications; Clothing); and

j.   The '919 Application (Streaming of video and audio material on the Internet).

11.   A Declaration that Plaintiff's for the HIGH TIMES® Registered Marks 4,069,371, 4,645,036, 4,706,729, 2,856,379 are in use and not abandoned;

12.   A permanent injunction, pursuant to NRS 600.430, preventing Defendants from:

a.   Manufacturing, using, displaying or selling Defendants' Products or other products or services identical or related to Plaintiff Goods and Services bearing Defendants' High Times - Names; and,

b.   Using Defendants' High Times - Names or any other identical or similar mark, word, or name as a trademark, service mark, trade name or corporate name in any manner likely to cause confusion, mistake or deception with Plaintiff, Plaintiff's State Registered HIGH TIMES® Marks or any Plaintiff Goods and Services bearing Plaintiff's State Registered HIGH TIMES® Marks;

13.   An order pursuant to NRS 600.430, compelling Defendants to deliver for destruction to an officer of the Court or Plaintiff all materials bearing High Times Names, or variants thereof, including Defendants' High Times-Named Products and Services or other products or services related to Defendants' High Times-Named Products and Services;

14.   Pursuant to NRS 600.430, an award to Plaintiff of Defendants' profits and compensatory damages, in an amount to be proven at trial, for the injuries sustained by Plaintiff

as a result of the acts complained of herein, and that said damages be trebled pursuant to NRS 600.430(2)(c);

15.    An order designating Plaintiff the prevailing party and awarding costs and reasonable attorney's fees pursuant to NRS 600.430(3).

16.    An adjudication that Defendants have unfairly competed with Plaintiff under the common law of Nevada;

17.    An adjudication that Defendants, and each of them, have infringed Plaintiff's Family of HIGH TIMES® Marks under the common law of Nevada;

18.    Pursuant to NRS 41.600(3), an order enjoining Defendants from using the Defendants' High Times-Names to trade on Plaintiff's long-standing and hard-earned goodwill in the HIGH TIMES® Marks, as well as from passing off Defendants' High Times-Named Products and Services as being those made by Plaintiff and cause confusion, mistake, or deception as to the affiliation, connection or association of Defendants and their goods with Plaintiff's HIGH TIMES® Branded Products, and as to whether the origin, sponsorship or approval of Defendants' products are the same as Plaintiff's HIGH TIMES® Branded Products, and awarding Plaintiff its full measure of damages, including for costs and attorneys' fees incurred in the prosecution of this action;

19.    An award to Plaintiff of its costs and reasonable attorneys' fees incurred in connection with this action; and

20.    An award to Plaintiff of such other and further relief as the Court deems just and equitable under the circumstances.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

40

1

## DEMAND FOR A JURY TRIAL

2

Pursuant to Fed. R. Civ. P. 28, Plaintiff hereby demands a trial by jury on all issues for

3

which a trial by jury may be had.

4

DATED this 12th day of September, 2025.

5

6

**DICKINSON WRIGHT PLLC**

7

*/s/John L. Krieger*

John L. Krieger, Esq.

8

Nevada Bar No. 6023

9

3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

10

Tel: 702-550-4400

11

Fax: 844-670-6009
Email:  jkrieger@dickinsonwright.com

12

Donald E. Lake, III (*pro hac vice* to be submitted)

13

1125 17th Street, Suite 550
Denver, Colorado 80202

14

Tel: 303-723-8400
Email: tlake@dickinsonwright.com

15

*Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

41